```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MARCO PETERS, Individually and
     on behalf of all others similarly
 4   situated,

 5                  Plaintiffs,

 6            v.                                11 Cv. 7133 (JPO)

 7   JINKOSOLAR HOLDING CO., LTD.,
     et al.,
 8
                    Defendants.
 9
     ------------------------------x
10                                              January 12, 2012
                                                11:15 a.m.
11
     Before:
12                        HON. J. PAUL OETKEN

13                                              District Judge

14                          APPEARANCES

15   BERNSTEIN LIEBHARD LLP
          Attorneys for Movants Al Mahmud, Shusterman, Snyder
16   BY:  U. SETH OTTENSOSER

17   ZAMANSKY & ASSOCIATES LLC
          Attorneys for Movants Meyer and Matkevich
18   BY:  JACOB H. ZAMANSKY

19   CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
          Attorneys for Movant Lin Wu
20   BY:  ALBERT Y. CHANG

21   O'MELVENY & MYERS LLP
          Attorneys for Defendants Credit Suisse, Oppenheimer,
22           Roth Capital and Collins Stewart
     BY:  B. ANDREW BEDNARK
23
     SHEARMAN & STERLING LLP
24        Attorneys for Defendant Jinkosolar Holding Co.
     BY:  BRIAN G. BURKE
25
```

1           (Case called)
2           THE DEPUTY CLERK:  Starting with the plaintiff, can I
3  have counsel state their appearance for the record, and also,
4  to be clear, who you are representing today.
5           MR. OTTENSOSER:  Good morning, your Honor.  Seth
6  Ottensoser, from Bernstein Liebhard, on behalf of movants Al
7  Mahmud, Mr. Shusterman and Mr. Snyder.
8           MR. ZAMANSKY:  Good morning, your Honor.  Jacob
9  Zamansky, Zamansky & Associates, on behalf of movants Meyer and
10 Matkevich.
11          MR. CHANG:  Good morning, your Honor.  Albert Chang,
12 with Chapin Fitzgerald Sullivan & Bottini, on behalf of the
13 single movant Lin Wu.
14          MR. BEDNARK:  Good morning, your Honor.  Andrew
15 Bednark, from O'Melveny & Myers, for defendants Credit Suisse
16 Securities (USA), Oppenheimer & Co., Roth Capital Partners,
17 LLC, and Collins Stewart.
18          MR. BURKE:  Good morning, your Honor.  Brian Burke,
19 from Shearman & Sterling, for defendant Jinkosolar Holding.
20          THE COURT:  Good morning, everyone.
21          We are here on the motions to appoint lead plaintiff
22 and lead counsel.  There were several motions initially filed
23 that met the December 12 deadline, as I understand it, and
24 there has been some realignment or shifting of the groups in a
25 couple of cases.  So as I understand it, correct me if I am

1   wrong, we now have basically two competing proposed lead
2   plaintiffs or lead plaintiffs groups.
3            MR. OTTENSOSER:  That's correct.
4            THE COURT:  Is it Mr. or Ms. Wu?
5            MR. CHANG:  Mr. Wu.
6            THE COURT:  We have Mr. Lin Wu, and then we have an
7   investor group, that is, Meyer, Matkevich, Shusterman and
8   Mahmud.  And I have the letter on behalf of Mr. Wu submitted
9   January 10 and then the responsive letter from Mr. Ottensoser
10  January 11.
11           So I guess I will hear from Mr. Chang first.  I read
12  your letter.  If there is anything you want to add to it.
13  Otherwise I will just ask what is on my mind.
14           MR. CHANG:  Sure.
15           THE COURT:  Do you have anything to add?
16           MR. CHANG:  We do not, your Honor, except that we want
17  to distinguish the several cases that the Meyer group cited
18  yesterday in yesterday's letter.
19           The Meyer group cited the Schulman case, the Rosenblum
20  case, and the Newman case.  Each of those cases were
21  distinguishable.  In the Rosenblum case, there is no opposition
22  at all.  In the Schulman case, the Newman case, and the CMS
23  case, there were institutional investors involved.
24           Our position is two-fold as stated in our letter.
25  Number one, the Meyer group motion was untimely and the 60 day

1   requirement is statutory and is not waiveable.  There is no
2   circuit authority on this point.  We have submitted to you in
3   our letter numerous cases across the country that district
4   judges refused to waive the 60 day statutory timeliness
5   requirement.
6            THE COURT:  All the plaintiffs in the alternative
7   proposed group did file.  They just didn't file as the same
8   group that is now proposed.  They filed as two separate groups,
9   which have now morphed into one group, right?
10            MR. CHANG:  That's right.
11            THE COURT:  And you think that doesn't meet the
12   requirement statute?
13            MR. CHANG:  That's right.  Because there was no
14   pending motion before December 12, 2011 from the Meyer group as
15   one group.
16            The second point is that even if this Court were to
17   look beyond the statutory timeliness requirements, the Meyer
18   group submission is defective in two ways.  Number one, it's
19   apparent, based on the declaration that was submitted by the
20   Meyer group, after the fact, that the individual group members
21   had no prelitigation relationship.  The conclusory bare-bone
22   statements in that declaration did not demonstrate any
23   cohesiveness, nor do they demonstrate that the Meyer group
24   members can actively manage counsel.  So even if the Court were
25   to look into the merits of the Meyer group's submission, the

1   Court should deny that motion.

2           THE COURT:  I know you had a position in your brief
3   earlier about the issue of loss causation and whether there is
4   a unique defense with respect to, I think it was Mr. Peters,
5   but that's now not at issue.  Now you concede that there is no
6   sort of unique issue with the other proposed group as to the
7   individuals and whether they face defenses that aren't
8   representative of the other members.

9           MR. CHANG:  That's right.  Mr. Peters absent from the
10  Meyer group also demonstrates in this context that the Meyer
11  group was cobbled together by the group's counsel just to vie
12  for the lead counsel appointment.  He is in a way conveniently
13  just abandoned by the group's counsel so that the group's
14  counsel can get the group appointed as lead plaintiff and get
15  counsel appointed as lead counsel.

16          THE COURT:  In some of the cases I think there would
17  be something to your argument if the people who were cobbled
18  together, as you put it, had small amounts of alleged loss in
19  the case.  But in this case, at least I think three of the four
20  have larger losses than Lin Wu, is that right?

21          MR. CHANG:  That's right.

22          THE COURT:  So it's not as though they are being
23  cobbled together for the purpose of getting the number higher
24  than your client's number.

25          MR. CHANG:  That's exactly right.  But we submit that

1    that is a distinction without a difference.  Because ultimately
2    it is a vying for position to get appointed as lead plaintiff
3    and lead counsel.  Aggregation of damages is just a way to get
4    to the appointments of lead plaintiff and lead counsel.
5             In this case, your Honor, we concede that Mr. Wu has
6    lower losses than some members of the Meyer group.  But the
7    PSLRA is very clear.  Number one, loss is not the only factor
8    for consideration.  Rule 23(a) must be considered and the court
9    must find adequacy and typicality before appointing lead
10   plaintiff.
11            Number two, the PSLRA has a strong purpose to curve
12   lawyer driven litigation, and we submit to you this is an
13   example of lawyer driven litigation submitting a group for the
14   Court's approval.
15            So ultimately we have two arguments, one is a
16   timeliness argument, another one is a merits argument.
17            THE COURT:  I understand.
18            I would like to hear from Mr. Zamansky or Mr.
19   Ottensoser, unless you have anything else to add.
20            MR. CHANG:  No.
21            THE COURT:  Thank you, Mr. Chang.
22            Mr. Ottensoser.
23            MR. OTTENSOSER:  Good morning again, your Honor.
24            Mr. Chang did cite some cases about timeliness, but we
25   cited two cases from this district, the Luminys case and the

1  Van der Moolen case, in one which there was an amended motion
2  and the second which was a stipulation put in after the 60
3  days, and both cases the court ruled that reconfiguring the
4  groups was timely and there was no issue under the PSLRA as all
5  the original movants had moved and there was no one new within
6  that denomination.
7           In terms of the way this happened, we have explained
8  in our papers that we moved on behalf of our group.  Mr.
9  Zamansky's firm moved on behalf of his group.  They are very
10 similar.  They are off by a couple thousand dollars the two
11 groups.  So we said, obviously, as individuals and as groups,
12 we are the largest out there.  Let's do this together.  Let's
13 do what is best for the class.  And in that regard, there was a
14 conference call held, we put in a declaration from the
15 participants of that conference call, and at that conference
16 call it was decided these are the four strongest plaintiffs
17 because of their individual losses.  And in terms of the
18 plaintiff that had a smaller loss, and his name is Mr.
19 Matkevich, he is in because he may be traceable to the IPO that
20 started the class period here having bought his shares very
21 early in the class period.
22          So in terms of the standing requirement, that would be
23 exceptionally important.  And I would note that Mr. Wu bought
24 his shares towards the end of the class period so there would
25 have been no strategic virtue in including him in our group.

1    We did not do this in order to get around and manufacture a
2    loss.  Groups are certainly welcome under the PSLRA under the
3    explicit language of the statute.  And we also cited yesterday
4    the Puda Coal case from December 2011, which is another Asian
5    securities fraud case, and in that case a group of investors
6    was appointed as well.
7             So in terms of where we are today, we think that this
8    group of the four shareholders that are put forward have the
9    largest loss under the PSLRA, are fully adequate and typical to
10   litigate the case here, and we think this will put the best
11   foot forward to bring home a recovery for the shareholders.
12            In terms of the timeliness, I think I addressed that.
13   We think we are timely as well.
14            THE COURT:  The only question about timeliness I have
15   is, there are two motions on the docket from the previous two
16   groups.  Just as a technical matter, I am not sure what
17   happened in the Judge Sweet case or the Judge Jones case or
18   whether you need to file.  I don't know if you withdraw the
19   prior motions and file a renewed motion or does there actually
20   need to be a motion that formally presents this new group as
21   the operative group?
22            MR. OTTENSOSER:  I don't think you need a new motion
23   because in the Van der Moolen case there was no new motion
24   after 60 days.  Instead, there was a stipulation given to the
25   judge which was to be so ordered.

1            I believe in the Luminys case, there was a motion

2   made, but it was without leave of court.  So there was a

3   question as to whether or not that motion was even properly

4   presented to the court.

5            I think to quote my friend, it's a distinction without

6   a difference, in that if there is a technical difference here,

7   we are happy to resolve that.  But at the end of the day, we

8   have given ample opportunity for the other movants in the case

9   to come in and contest what we have done.  There were papers

10  put in on it and it's not some kind of midnight madness move

11  that occurred.  If your Honor feels that the proper thing for

12  us to do is put in a motion to belt and suspender the issue, we

13  are happy to do that, but having read the cases, especially the

14  Van der Moolen case where there was no new motion, we didn't

15  think we needed to do that.

16           THE COURT:  I think it would be better if there were a

17  motion.  I don't think it needs to be a briefed motion.  I just

18  think there should be a motion, and I guess I am inviting the

19  motion or directing you as a procedural matter.  I realize that

20  there is some tension under the PSLRA between the notion of

21  lawyer driven litigation and preventing lawyer driven

22  litigation, on the one hand, and allowing sort of resolution of

23  classes used by allowing lawyers to put together groups when

24  it's appropriate, and in this case I don't think the group was

25  put together in order to manufacture a greater number because,

1  in fact, at least there are good reasons to put together this
2  particular group.  I do think as a technical matter it would be
3  helpful to have a motion that defines the operative group.
4              MR. OTTENSOSER:  We will do so, your Honor.
5              THE COURT:  I think that's all I need.  We are going
6  to take it under advisement and probably do a short opinion
7  addressing the motion after you file your motion.
8              MR. OTTENSOSER:  Thank you, your Honor.
9              THE COURT:  I assume that the counsel for defendants
10 don't have a dog in this hunt.
11             MR. BURKE:  That's right, your Honor.  Jinkosolar
12 takes no position on the competing motions, but expressly
13 reserves all rights and defenses, including the suitability of
14 the proposed lead plaintiffs and jurisdictional defenses.
15             MR. BEDNARK:  The underwriter defendants agree with
16 that.
17             THE COURT:  I will take it under advisement and will
18 rule based on the filing of the motion.
19             Is there anything else to be addressed today?
20             MR. OTTENSOSER:  No, your Honor.
21             MR. CHANG:  May I briefly respond to the standing and
22 adequacy of inclusion of one of the Meyer group members?
23             THE COURT:  Yes.
24             MR. CHANG:  The traceability issue under Section 11
25 and Section 12 is not a standing requirement.  It is an

1    affirmative defense by the defendants.  The Weinberg case from
2    the Southern District of New York from 2003, it's 216 F.R.D.
3    248, explicitly rejected this argument on adequacy of a lead
4    plaintiff.
5             Ultimately the point is this.  That the PSLRA mandates
6    the appointment of the most adequate lead plaintiff in every
7    securities case and there is strong policy behind appointing
8    one strongest lead plaintiff and one law firm, and we submit to
9    you that this is the case here.
10            If the Court is considering waiving the 60 day time
11   limits, we request that the Court consider entering a 1292(b)
12   certification because there is no circuit case law on the point
13   of the statutory deadline, and apparently, just from the
14   submissions from the parties, there is a reasonable ground for
15   district judges to rule differently on this issue.
16            THE COURT:  This wouldn't typically be appealable.
17            MR. CHANG:  That's why we are asking the Court to
18   consider entering a 1292(b) certification for interlocutory
19   appeal.
20            THE COURT:  I will consider that.
21            Is there any response?
22            MR. OTTENSOSER:  I would vigorously oppose that.  This
23   is just another try to have a bite at the same apple.  We have
24   here a very cohesive group who did timely move.  We haven't
25   added any new members and the case law within this district

1   indicates that amended motions or reconfigured groups are OK.
2   So we think if there is some kind of 1292(b) certification, it
3   just delays the case.  It causes memories to fade from the
4   witnesses.  We don't get to put our amended complaint and push
5   this case along.  So we would oppose that motion.
6           MR. CHANG:  Your Honor, just to be clear, 1292(b) does
7   not provide an automatic stay of the case.  We do not intend to
8   stay this proceeding.
9           THE COURT:  If I did a 1292(b) certification, then the
10  Second Circuit would also have to agree to take the case.
11          MR. CHANG:  Right.
12          THE COURT:  OK.  I will have to look at that.  I am
13  not certain what I will do about that, but I will consider your
14  request.
15          MR. CHANG:  Sure.
16          THE COURT:  All right.  Thank you, all.
17          (Adjourned)