USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: July 31, 2014

N.Y.S.D. Case #
11-cv-7133(JPO)

**13-616-cv**
**Vaughn Leroy Meyer v. JinkoSolar Holding Co.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: September 18, 2013 Decided: July 31, 2014)

Docket No. 13-616-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VAUGHN LEROY MEYER, RICHARD MATKEVICH, ABDULLAH AL MAHMUD, AZRIEL SHUSTERMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellants,

MARCO PETERS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

JINKOSOLAR HOLDINGS CO., LTD., STEVEN MARKSCHEID, CREDIT SUISSE SECURITIES (USA) LLC, OPPENHEIMER & CO., INC., ROTH CAPITAL PARTNERS, LLC, COLLINS STEWART LLC,

Defendants-Appellees,

WILLIAM BLAIR & CO., XIANDE LI, KANGPING CHEN, XIANHUA LI, WING KEONG SLEW, HAITAO JIN, ZIBIN LI, LOGGEN ZHANG,

Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e: WINTER, WALKER, and WESLEY, Circuit Judges.

* The clerk is instructed to modify the party caption to conform to this opinion.

CERTIFIED COPY ISSUED ON 07/31/2014

Appeal from an order of the District Court for the Southern District of New York (J. Paul Oetken, _Judge_) dismissing a complaint alleging violations of the federal securities laws. We vacate the dismissal of the complaint on the ground that the failure to disclose ongoing serious pollution problems rendered misleading statements describing measures taken to comply with Chinese environmental regulations.

MICHAEL STEPHEN BIGIN (Uri Seth Ottensoser, Joseph R. Seidman, Jr., Laurence Jesse Hasson, _on the brief_), Bernstein Liebhard LLP, New York, NY, _for Plaintiffs-Appellants_.

BRIAN H. POLOVOY (Jerome S. Fortinsky, _on the brief_), Shearman & Sterling LLP, New York, NY, _for Defendants-Appellees_ JinkoSolar Holdings Co., Ltd. and Steven Markscheid.

WILLIAM J. SUSHON (Bradley J. Butwin, B. Andrew Bednark, _on the brief_), O'Melveny & Meyers LLP, New York, NY, _for Defendants-Appellees_ Credit Suisse Securities (USA) LLC, Oppenheimer & Co., Inc., Roth Capital Partners, LLC, and Collins Stewart LLC.

WINTER, _Circuit Judge_:

Various purchasers of securities issued by JinkoSolar Holdings Co., Ltd. in two public offerings appeal from Judge Oetken's dismissal of their complaint alleging violations of the

federal securities laws. We hold that appellees' failure to disclose ongoing, serious pollution problems rendered misleading statements in a prospectus describing prophylactic measures taken to comply with Chinese environmental regulations. We therefore vacate and remand.

## BACKGROUND

In reviewing a dismissal under Rule 12(b)(6), we view the facts alleged in the complaint as true. N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013).

Primarily using facilities in China, JinkoSolar manufactures various photovoltaic products ("PV products"), that is, solar cells and solar panel products. JinkoSolar's size and range of products rapidly increased after its July 2009 acquisition of Zhejiang Sun Valley Energy Application Technology Company, Ltd. ("Sun Valley"). Its main production plants are located in the Jiangzi and Zhejiang provinces in China, which are regulated by the Haining Environmental Protection Bureau ("EPB").

JinkoSolar made two public offerings of American Depository Shares ("ADS") on the New York Stock Exchange ("NYSE"), one on May 13, 2010, and the other on November 10, 2010. The May offering consisted of 5,835,000 ADS, which were sold at $11 a share and raised a total of $64,185,000.

The prospectus accompanying the May offering discussed the pollution potential of JinkoSolar’s business, the applicability of Chinese environmental regulations and standards, and JinkoSolar’s efforts at compliance. It stated:

> We generate and discharge chemical wastes, waste water, gaseous waste and other industrial waste at various stages of our manufacturing process as well as during the processing of recovered silicon material. **We have installed pollution abatement equipment at our facilities to process, reduce, treat, and where feasible, recycle the waste materials before disposal, and we treat the waste water, gaseous and liquid waste and other industrial waste produced during the manufacturing process before discharge. We also maintain environmental teams at each of our manufacturing facilities to monitor waste treatment and ensure that [these] waste emissions comply with [People’s Republic of China] environmental standards. Our environmental teams are on duty 24 hours. We are required to comply with all PRC national and local environmental protection laws and regulations** and our operations are subject to periodic inspection by national and local environmental protection authorities. PRC national and local environmental laws and regulations impose fees for the discharge of waste materials above prescribed levels, require the payment of fines for serious violations and provide that the relevant authorities may at their own discretion close or suspend the operation of any facility that fails to comply with orders requiring it to cease or remedy operations causing environmental damage. As of December 31, 2009, no such penalties had been imposed on us.[1]

[1] The November prospectus contained the same language, except, at the end of the section it stated, “[a]s of the date of this prospectus, no such penalties had been imposed on us.”

Amend. Compl. ¶ 80 (emphasis in original). The May prospectus also stated:

> ***Compliance with environmental, safe production and construction regulations can be costly, while non-compliance with such regulations may result in adverse publicity and potentially significant monetary damages, fines and suspension of our business operations.*** We use, store and generate volatile and otherwise dangerous chemicals and wastes during our manufacturing process, **and are subject to a variety of government regulations related to the use, storage and disposal of such hazardous chemicals and waste. We are required to comply with all PRC national and local environmental regulations** . . . .

Amend. Compl. ¶ 82 (emphasis in original).[2]

On June 8, 2010, appellees submitted a report to the EPB about JinkoSolar's recent expansion in solar cell production. The report contained a section entitled "Existing Problems." It explained that the Zhejiang plant was "not disposing of hazardous solid waste in accordance with relevant disposal methods, and was emitting high levels of fluorides." Amend. Compl. ¶ 5. It stated:

> 1. The tube used for the discharge of chlorine (Discharge Tube A) currently has a height of 15 metres. This does not meet the minimum height requirements.
>
> 2. According to monitoring data from the Haining City Environmental Protection Bureau,

[2] The November prospectus contained identical language. This exact passage was repeated in the 2010 year-end report on April 25, 2011.

> HCl concentration levels in the region surrounding the enterprise have exceeded set limits . . . . The area surrounding the project does not have capacity for storing HCl. If this project continues to use HCl cleaning processes then once completed this would worsen the HCl pollution situation in the local area.
>
> 3. Sludge produced by the enterprise is classed as hazardous solid waste. This has not been disposed of in accordance with relevant State disposal methods.
>
> 4. Presently, the tower operated by the enterprise to absorb acidic mist has 35% efficiency in removing inorganic fluorides, which means that industrial emission volumes for fluorides are comparatively large.

Amend. Compl. ¶ 61. In a section entitled "Measures for Restructuring and Reform," the report listed a number of structural changes that would be necessary to ameliorate the problems described in the report.

In April 2011, JinkoSolar received a notice from the EPB "informing [JinkoSolar] of high fluoride level in its waste." On May 11, 2011, the EPB detected "higher than acceptable levels of fluoride at JKS, this time in its waste water." Amend. Compl. ¶ 6. In another document submitted to the EPB, JinkoSolar reported again that the water around the plant did not meet environmental standards because of, inter alia, fluoride levels.

The complaint further alleges that on September 15, 2011, "news started to break that local residents living near [JinkoSolar's] solar cell plant in Zhejiang angrily demonstrated outside the facility following a massive die-off of fish over the

previous month in the river flowing immediately adjacent to the plant." Amend. Compl. ¶ 9. At one point, the protest turned violent and protesters overturned cars, including police cars, and damaged surrounding buildings. Within the next few days, the People's Republic of China ordered that the plant be closed and that JinkoSolar take remedial action. On September 22, 2011, JinkoSolar issued a press release revealing that JinkoSolar was fined for non-compliance with environmental regulations in May 2011 and paid local landowners for damage to their crops and death of livestock and wildlife. The complaint alleges that JinkoSolar's stock lost 40% of its value by the time the dust had settled.

On October 11, 2011, appellants commenced this action against JinkoSolar, several of its officers and directors, and several entities that served as underwriters for the ADS offerings. Appellants alleged violations of Sections 11 and 12(a)(2) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934. The complaint also alleged controlling person liability against various appellees under Section 15 of the 1933 Act and Section 20(a) of the 1934 Act.

Various appellees moved before the district court for dismissal for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). The court granted the motion.

Central to appellants' claims were the paragraphs in the May prospectus (and repeated later) quoted above. With regard to the statements about JinkoSolar's storage of hazardous and dangerous chemicals, PRC national and local regulations, and the costs of compliance or non-compliance, the court held that those statements were not misleading. However, the court deemed that the paragraph discussing JinkoSolar's pollution abatement equipment and its 24-hour environmental monitoring team "a more complicated matter" and "arguably a close call." Peters v. JinkoSolar Holding Co., No. 11 Civ. 7133 (JPO) (S.D.N.Y. Feb. 27, 2013). However, the court concluded that the reasonable investor would not read the statement about "ensur[ing]" compliance to actually guarantee compliance because "elsewhere in the Prospectuses, Jinkosolar underscored to investors that fines due to pollution are a real possibility." Id. at *7. Because the court did not find any material misstatements or omissions, it dismissed the complaint. This appeal followed.

DISCUSSION

We review the grant of a Section 12(b)(6) motion to dismiss de novo. N.J. Carpenters, 709 F.3d at 119; Lentell v. Merrill Lynch & Co., 396 F.3d 161, 167 (2d Cir. 2005). In doing so, we "accept[] all factual allegations [in the complaint] as true and draw[] all reasonable inferences in favor of the plaintiff." N.J. Carpenters, 709 F.3d at 119 (quoting Litwin v. Blackstone

Grp., L.P., 634 F.3d 706, 715 (2d Cir. 2011)). At this stage, dismissal is appropriate only where appellants can prove no set of facts consistent with the complaint that would entitle them to relief. Elec. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc., 129 F.3d 240, 242-43 (2d Cir. 1997).

The complaint, alleging violations of Sections 11 and 12 of the 1933 Securities Act and Section 10(b) of the 1934 Securities Exchange Act, raises a host of legal issues with regard to varying standards of liability and defenses, the various plaintiffs' standing, the particularity of the pleadings with regard to requisite states of mind and conduct of each defendant, etc. However, each of the three sections imposes liability for a material misstatement of fact or an omission to state a fact that renders a statement made materially misleading. See Securities Act of 1933 § 11(a), 15 U.S.C. § 77k(a) (2012) ("In case any part of the registration statement . . . contain[s] an untrue statement of a material fact or omit[s] to state a material fact . . . necessary to make the statements therein not misleading, any person acquiring such security . . . may . . . sue . . . ."); Securities Act of 1933 § 12(a)(2), 15 U.S.C. § 77l(a)(2) (2012) ("Any person who . . . offers or sells a security . . . which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading . . . shall be liable . . . ."); In re Time Warner

Inc. Sec. Litig., 9 F.3d 259, 269 (2d Cir. 1993) ("A duty to disclose arises whenever secret information renders prior public statements materially misleading . . . .").

The district court dismissed the complaint for failure to meet this requirement. We disagree and vacate the dismissal. We intimate no view on any other issue.

While the statements regarding JinkoSolar being subject to a variety of pollution regulations and the high cost of both compliance and non-compliance are not misstatements, they are relevant to the materiality of the prospectuses' description of JinkoSolar's potential to cause serious pollution problems and the steps it was taking to avoid those problems. With regard to that description, we believe the complaint sufficiently alleges that the failure to disclose that the prophylactic steps were then failing to prevent serious ongoing pollution problems rendered that description misleading.

a) Material Omissions

In general there is no duty to disclose a fact in the offering documents "merely because a reasonable investor would very much like to know that fact," In re Time Warner, 9 F.3d at 267, but "[d]isclosure is required . . . when necessary 'to make . . . statements made, in light of the circumstances under which they were made, not misleading.'" Matrixx Initiatives, Inc. v. Siracusano, 131 S.Ct. 1309, 1321 (2011) (quoting 17 C.F.R. § 240.10b-5(b)).

Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth. See Caiola v. Citibank, N.A., 295 F.3d 312, 331 (2d Cir. 2002) ("[T]he lack of an independent duty is not . . . a defense to . . . liability because upon choosing to speak, one must speak truthfully about material issues. Once Citibank chose to discuss its hedging strategy, it had a duty to be both accurate and complete.").[3] As we have stated:

> The literal truth of an isolated statement is insufficient; the proper inquiry requires an examination of defendants' representations, taken together and in context. Thus, when an offering participant makes a disclosure about a particular topic, whether voluntary or required, the representation must be complete and accurate.

In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 366 (2d Cir. 2010) (internal citations and quotation marks omitted).

b) Application

We address only the disclosures of the May prospectus because our conclusion that they could be found by a trier of fact to be materially misleading applies a fortiori to the later repetition of those disclosures.

---

[3] Because the May prospectus discussed the risks of pollution inherent in JinkoSolar's business and the general practices JinkoSolar had implemented to cabin this risk, it put the issue "in play," Shapiro v. UJB Financial Corp., 964 F.2d 272, 282 (3d Cir. 1992), so we have no need to discuss whether it had a duty to disclose such risks.

As quoted above, the prospectus discussed JinkoSolar's pollution abatement equipment and its provision of monitoring environmental teams on duty 24 hours a day. These statements must be read in the context of the further disclosure by the prospectus that JinkoSolar generates, uses, and stores "dangerous chemicals and wastes" and is subject to Chinese regulations regarding such chemicals and wastes. Amend. Compl. ¶ 82. The prospectus also informed investors that compliance with such regulations is costly and that non-compliance may lead to bad publicity, fines, and even a suspension of the business.

All of the above may be technically true. However, the description of pollution-preventing equipment and 24-hour monitoring teams gave comfort to investors that reasonably effective steps were being taken to comply with applicable environmental regulations. To be sure, these descriptions did not guarantee 100% compliance 100% of the time. Such compliance may often be unobtainable, and reasonable investors may be deemed to know that. However, investors would be misled by a statement such as that quoted above if in fact the equipment and 24-hour team were then failing to prevent substantial violations of the Chinese regulations.

The complaint alleges that in June 2010 JinkoSolar submitted a report to Chinese regulators about "existing problems." This report, quoted in detail supra, describes problems of a nature

that is sufficient, if proven, to allow a trier of fact, absent contrary evidence, to draw an inference that the problems "existing" as of June 8, 2010, were both present and substantial at the time of the May 13, 2010, offering.

The failure to disclose these problems in the May prospectus could be found by a trier of fact to be an omission that renders misleading the comforting statements in the prospectus about compliance measures. This misleading omission is not cured by the additional statement that non-compliance with the environmental regulations may be very costly. Although this statement warned of a financial risk to the company from environmental violations, the failure to disclose then-ongoing and serious pollution violations would cause a reasonable investor to make an overly optimistic assessment of the risk. A generic warning of a risk will not suffice when undisclosed facts on the ground would substantially affect a reasonable investor's calculations of probability. Rombach v. Chang, 355 F.3d 164, 173 (2d Cir. 2004) ("Cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired.") One cannot, for example, disclose in a securities offering a business's peculiar risk of fire, the installation of a comprehensive sprinkler system to reduce fire danger, and omit the fact that the system has been found to be inoperable, without misleading investors.

Of course, the misleading omission must be material, that is, the omission must be of facts that a reasonable investor would consider important. In re Morgan Stanley, 592 F.3d at 360. That requirement is not much of a barrier to appellants' prevailing on a Fed. R. Civ. P. 12(b)(6) motion in this matter. At the time the statements regarding pollution prevention and compliance measures were made, a reasonable investor could conclude that a substantial non-compliance would constitute a substantial threat to earnings, if not to the entire venture. Indeed, the prospectus said as much. Applying the Basic formulation of measuring the importance of the event discounted by the probability of its occurrence, Basic, Inc. v. Levinson, 485 U.S. 224, 238 (1988) (quoting SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (2d Cir. 1968)), a trier of fact could find that the existence of ongoing and substantial pollution problems -- here the omitted facts -- was of substantial importance to investors.

## CONCLUSION

We therefore vacate the dismissal of the complaint and remand.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit