**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARCO PETERS, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

JINKOSOLAR HOLDING CO., LTD., XIANDE LI, KANGPING CHEN, XIANHUA LI, WING KEONG SLEW, HAITAO JIN, ZIBIN LI, STEVEN MARKSCHEID, LONGGEN ZHANG, CREDIT SUISSE SECURITIES (USA) LLC, OPPENHEIMER & CO. INC., ROTH CAPITAL PARTNERS, LLC, WILLIAM BLAIR & CO., and COLLINS STEWART LLC,

Defendants.

No. 11 Civ. 7133 (JPO)

Class Action

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER AUTHORIZING DISBURSEMENT OF THE NET SETTLEMENT FUND**

Lead Plaintiffs Abdullah al-Mahmud, Azriel Shusterman, and Vaughn Leroy Meyer, individually and on behalf of the Class,[1] respectfully request entry of a proposed order, which approves distributing the Net Settlement Fund to Authorized Claimants; rejects certain claims; rejects one claimant's request that he receive more money than allowable under the Court-approved plan of allocation (the "Plan of Allocation"); bars further claims; approves certain additional fees for the Claims Administrator, and sets a retention policy for claim documents (the "Distribution Order").[2]

## INTRODUCTION

The Court-appointed claims administrator, Garden City Group, Inc. ("GCG"), has informed Co-Lead Counsel that it has processed all claims for payment from the Net Settlement Fund. GCG reports that as of the January 12, 2016 claims deadline, GCG received 640 timely claims that met the approved criteria for payment. After January 12, 2016, GCG processed an additional 34 claims that were late, but otherwise valid. Since these "Late Claims" do not materially delay the distribution, Co-Lead Counsel requests that the Court permit payment for all 674 eligible claims. *See* Affidavit of Stephen Cirami in Support of Motion for Distribution of the Net Settlement Fund ("Cirami Aff.") ¶ 30.

GCG also rejected 3,904 claims that failed to meet the requirements of the Stipulation, the Plan of Allocation, or otherwise lacked sufficient documentation. *Id.* ¶ 33. These claims were denied after review and rejection in accordance with the procedure approved by the Court. Accordingly, the Court should approve GCG's rejection of these claims.

---

[1] All capitalized terms will have the same meaning as in the September 15, 2015 Stipulation of Settlement (ECF No. 100).

[2] Co-Lead Counsel has conferred with counsel for Defendants, who take no position on this motion.

As discussed in more detail below, one claimant, who submitted three proofs of claim, asks that the Court review one of his claims. This claimant suffered an out-of-pocket loss of $19,084.10 and a "Recognized Loss" under the Plan of Allocation of $824.10. *See* Cirami Aff. ¶ 35(a)-(b). This claimant believes that he is entitled to more money than allowable under the Plan of Allocation because his out-of-pocket loss exceeds his Recognized Loss. *Id.* ¶ 35(c). Here, Recognized Loss is based on the number of JKS ADS purchased or acquired during the Class Period *and* held at the time of one or both of the alleged corrective disclosures. Losses suffered from sales prior to these disclosures were rightly excluded from the Plan of Allocation because such losses are unrelated to the alleged fraud. Indeed, such "in-and-out losses" are invariably excluded from plans of allocation in securities class actions because the Supreme Court held in *Dura Pharm. v. Broudo, Inc.*, 544 U.S. 336 (2005) that losses suffered prior to a corrective disclosure in a securities fraud case are generally not compensable because they were caused not by a revelation of previously concealed adverse facts, but rather by extraneous market factors. Accordingly, this claimant should not be awarded more than the amount dictated by the Plan of Allocation.

Additionally, now that the claims process is complete, Co-Lead Counsel seeks to set October 27, 2016 as the final bar date for claims. This bar date is reasonable, as claims after this date will delay the distribution process and cause additional costs for the Class. Also, to facilitate claims administration, Co-Lead Counsel requests that each claimant's check state that it must be cashed in 90 days or else it is void. This deadline will encourage prompt cashing and will allow Co-Lead Counsel to determine if a second distribution is feasible in a timely manner.

In order to complete the administration of the Settlement, GCG notified Co-Lead Counsel that it will require an additional $24,914.28 above the $150,000 estimated for identifying

claimants, sending out Proofs of Claim, and processing claim forms. Cirami Aff. ¶ 48; ECF No. 100 ¶ 7. Here, GCG received far more claims than anticipated, resulting in fees and expenses of $174,914.28. *See* Cirami Aff. ¶ 48 and Ex. D thereto. As discussed below, GCG's additional fees are necessary to effectuate the Settlement. Thus, Co-Lead Counsel requests that the Court approve payment of an additional $24,914.28 to GCG.

Finally, GCG has requested that it be permitted to destroy claimants' paper documents and electronic documents, one and three years after distribution, respectively. This request is reasonable to save GCG and the Class the costs of unnecessary storage.

For all the reasons herein, Lead Plaintiffs' motion for distribution of the Net Settlement Fund should be granted in its entirety.

**PROCEDURAL HISTORY**
**(Related to the Settlement)**

The Parties entered into the Stipulation providing for the settlement of this action on behalf of a Class consisting of all persons and entities who purchased or otherwise acquired JKS New York Stock Exchange-traded ADSs between May 13, 2010 and September 20, 2011, either in or traceable to the May 13, 2010 initial public offering or the November 4, 2010 secondary offering, or on the open market during the Class Period. The Stipulation provides for the payment of $5,050,000 in cash for the benefit of the Class in exchange for release of all Released Claims against Defendants.

By Order dated September 17, 2015, the Court preliminarily approved the Settlement (the "Preliminary Approval Order," ECF No. 104). In the Preliminary Approval Order, among other things, the Court appointed GCG as Claims Administrator. *Id.* ¶ 8. Pursuant to the Preliminary Approval Order, GCG mailed the Notice to Class members on October 15, 2016. Affidavit of Jose C. Fraga Regarding Mailing of the Notice and Proof of Claim Form and Publication of the

Summary Notice (the "Fraga Affidavit") dated February 18, 2016, ¶¶ 2-7. The Notice instructed Class members that the deadline to submit Proofs of Claim was January 12, 2016. ECF 109-1 at 1.

On March 11, 2016, the Court granted final approval of the Settlement and entered the Final Order and Judgment. ECF No. 113. The Court also approved the Plan of Allocation as "a fair and reasonable method of distributing settlement proceeds to Class members." *Id.* ¶ 16.[3]

## ARGUMENT

### I. THE COURT SHOULD ORDER THAT THE NET SETTLEMENT FUND BE DISTRIBUTED TO ALL AUTHORIZED CLAIMANTS

GCG, under the supervision of Co-Lead Counsel, has determined that 640 members of the Settlement Class have submitted valid and timely Claims to GCG. Cirami Aff. ¶ 30. These claims are listed on Exhibit B-1 of the Cirami Affidavit. The Authorized Claimants who have submitted these valid and timely claims are entitled to their pro rata share distribution of the Net Settlement Fund.

Additionally, GCG received 34 untimely, but otherwise valid, claims as of October 27, 2016. *Id*. at Exhibit B-2. The determination of whether to allow payment of the Late Claims is an equitable decision within the discretion of the court. *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 12-cv-1203 (VC) (October 5, 2016) (Exhibit A hereto at 2); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG), 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) (allowing late claims "[b]ecause there is no showing of delay or prejudice"); *In re Crazy*

---

[3] Pursuant to the Final Judgment, "[t]his Court hereby retains exclusive jurisdiction over the Parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Class." ECF No. 113 ¶ 21.

*Eddie Sec. Litig.*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) (citation omitted) ("there is an implicit recognition that late claims should ordinarily be considered in the administration of a settlement"). Because the untimely filing of these otherwise valid claims has not caused significant delay to the distribution of the Net Settlement Fund, Co-Lead Counsel requests that the Court approve payment of the 34 untimely but otherwise valid Claims that GCG received through October 27, 2016. *See* Cirami Aff. Ex. B-2.

Accordingly, Co-Lead Counsel respectfully requests that the Court permit the distribution of the Net Settlement Fund to the Authorized Claimants listed in Exhibits B-1 and B-2 of the Cirami Affidavit.

## II. ALL REJECTED CLAIMS WERE PROPERLY DENIED

After reviewing all 4,578 claim forms received for this action, GCG properly rejected 3,904 claims for the reasons stated in the Cirami Aff.:

| No. of Claims | Reason for Rejection |
|---|---|
| 250 | Claim Did Not Fit the Definition of the Class |
| 27 | Duplicate Claim[4] |
| 406 | Deficient Claim Never Cured |
| 3,222 | Claim Did Not Result in a Recognized Loss |
| 3,904 | Total Claims Rejected |

*Id.* ¶ 33. All of these claims were rejected for valid reasons. None of these claimants contest GCG's determinations. Accordingly, all of these claims should be rejected.

As mentioned above, one claimant requests that the Court review one of his claims.[5] As to this claim, the claimant disputes the determination because he incurred a "Net Trading Loss"

[4] GCG has confirmed that each of these duplicate claims is an exact match to a claim that has been included in either the list of Authorized Claimants or Rejected or Ineligible Claimants.

of $19,084.10, but will only recover based on a Recognized Loss of $824.10. The reason for the disparity, however, is because the claimant sold over 80% of his shares for a loss prior to the first partial revelation of the fraud. *Id.* ¶ 35(b). Accordingly, those losses were not caused by the alleged fraud. *Broudo*, 544 U.S. 336 ("in-and-out" losses suffered prior to a corrective disclosure are generally not recoverable under the federal securities laws because such losses were not caused by the alleged fraud).

The Court-approved Plan of Allocation, which was developed with the assistance of an economic expert, correctly excluded losses suffered in connection with this claimant's 1,730 JKS ADS sold prior to the first alleged corrective disclosure and calculated his Recognized Loss based on the 410 JKS ADS the claimant held after the first and second (final) curative disclosures. Thus, the claimant should not recover based on any portion of his Net Trading Loss other than the $824.10 Recognized Loss he lost as a result of the stock drops following the September 2011 corrective disclosures. Accordingly, the Court should reject this claimant's request for a larger recovery than that allowed under the Plan of Allocation.

## III. THE FINAL CLAIMS BAR DATE SHOULD BE OCTOBER 27, 2016

In order to facilitate the efficient distribution of the Net Settlement Fund, there must be a final cut-off after which no other claims may be accepted. *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) (in the distribution of a large class action settlement, such as this one, "a cutoff date is essential and . . . the matter must be terminated").

GCG has processed all claims it was aware of as of October 27, 2016. Additional processing will delay the distribution and add costs for the more timely claimants to bear.

[5] This claimant submitted late Proofs of Claim for three accounts that were initially processed as three separate claims. Cirami Aff. ¶ 35(a). One claim was a duplicate of the contested claim and the second did not result in a Recognized Loss. *Id.* The claimant agreed to the rejection of these two claims. *Id.*

Accordingly, it is respectfully requested that no claim received on or after October 27, 2016, may be accepted for any reason whatsoever.

## IV. VOIDING CHECKS OUTSTANDING AFTER 90 DAYS IS NECESSARY FOR AN EFFICIENT DISTRIBUTION

Experience shows that not all of the payments distributed to Authorized Claimants will be cashed promptly. In order to encourage Class Members to promptly cash their distributions, Co-Lead Counsel proposes that all the distribution checks bear the following notation: "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED WITHIN 90 DAYS AFTER ISSUE DATE."

Implementing this process will save administration costs and is necessary in order for Co-Lead Counsel to know the amount of cash available for redistribution. This will allow Co-Lead Counsel to comply with the requirement that, if economically feasible, GCG shall re-distribute "any balance remaining in the Net Settlement Fund six months from the date of distribution of the Net Settlement Fund by reason of un-cashed distributions or otherwise." ECF No. 100 ¶12.[6] Therefore, the 90 day legend should be included on the checks to claimants.

## V. THE COURT SHOULD APPROVE GCG'S ADDITIONAL FEES, WHICH WERE NECESSARY TO EFFECTUATE THE SETTLEMENT

The Stipulation provided for payment of GCG's fees incurred in administering the Settlement and also allowed Co-Lead Counsel to request additional fees for GCG if warranted:

> The Escrow Agent may pay from the Gross Settlement Fund, without further approval from Defendants, the reasonable costs and expenses associated with identifying members of the Class and effecting mailing of the Notice and publication of the Publication Notice to the Class, and the administration of the Settlement, including without limitation, the actual costs of publication, printing and mailing the Notice, reimbursements to nominee owners for forwarding Notice

---

[6] "If a redistribution is not economically feasible and funds still remain in the Net Settlement Fund or if after six months following the redistribution funds still remain in the Net Settlement Fund, the outstanding balance shall be donated to a non-sectarian, not-for-profit 501(c)(3) organization serving the public interest, designated by Lead Plaintiffs." *Id*.

> to their beneficial owners, bank fees, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims. Such costs and expenses together shall not exceed $150,000, though Co-Lead Counsel may make an application to the Court for reasonable expenses exceeding this amount.

ECF 100 ¶ 7.

Here, GCG's total cost for effectuating the Settlement will be $174,914.28, approximately $25,000 more than the amount estimated in the Stipulation. GCG's additional costs were necessary to effectuate the Settlement. *See generally* Cirami Aff. ¶ 48. Specifically, GCG received far more requests for Claim Packets than anticipated, printed and mailed twice the amount of Claim Packets originally anticipated would be necessary for the Settlement Class, and received approximately 15% more claims than originally estimated. *Id.* Accordingly, the Court should allow GCG to be paid the full $174,914.28.

## VI. THE PROPOSED RECORD RETENTION PERIOD IS REASONABLE

GCG asks to destroy Proof of Claim forms and records in paper form one year after final distribution and Proof of Claim forms and records in electronic form three years after final distribution. GCG advises that in its experience, this is a reasonable retention period and will save the Class storage costs. *Id*. ¶ 49. Accordingly, Co-Lead Counsel requests that the Court approve this request.

## CONCLUSION

Based on the foregoing, Co-Lead Counsel respectfully requests that the Court enter the Distribution Order submitted herewith.

Dated: November 1, 2016

Respectfully submitted,

BERNSTEIN LIEBHARD LLP

By: /s/ Michael S. Bigin
Michael S. Bigin (bigin@bernlieb.com)
Joseph R. Seidman, Jr. (seidman@bernlieb.com)
10 East 40th Street
New York, New York 10016
Tel: (212) 779-1414
Fax: (212) 779-3218 (fax)

ZAMANSKY LLC

By: /s/ Samuel E. Bonderoff
Jacob H. Zamansky
Samuel E. Bonderoff
50 Broadway, 32nd Floor
New York, New York 10004
Tel: (212) 742-1414
Fax: (212) 742-1177

**Co-Lead Counsel for Lead Plaintiffs and the Class**